FILED IN DISTRICT COURT
OKLAHOMA COUNTY

JAN 2 9 2015

TIM RHODES
COURT CLERK
30

DISTRICT COURT OF OKLAHOMA COUNTY
STATE OF OKLAHOMA

ARLINGTON ARMS, LLC, )
                                            )
        Plaintiff, )
                                            )
v. ) Case No.: CJ - 2015 - 593
                                            )
HOUSTON SPECIALTY INSURANCE )
COMPANY and DEREK O'DANIELL, )
                                            )
       Defendants. )

## PETITION

The Plaintiff, Arlington Arms, LLC ("Arlington Arms" or "Plaintiff"), for its Petition against the Defendants, Houston Specialty Insurance Company ("Houston Specialty") and Derek O'Daniell ("O'Daniell"), alleges and states:

### JURISDICTION AND VENUE

1. Arlington Arms is a domestic limited liability company and conducts business as an apartment complex in Oklahoma City, State of Oklahoma.

2. Houston Specialty is an insurance company that does business in Oklahoma and issued the subject policy of insurance to Plaintiff in Oklahoma County, Oklahoma. Houston Specialty also handled Plaintiff's claim at issue herein in Oklahoma County, Oklahoma.

3. O'Daniell is an individual who resides in Oklahoma County, Oklahoma and had direct communications with Houston Specialty regarding Plaintiff's claim.

### FACTUAL BACKGROUND

4. On or about May 29, 2012, a severe hailstorm passed through the Oklahoma City area and caused damage to Arlington Arms, including damage to the roof, siding, and windows. In addition, the damage was so extensive that several units were rendered uninhabitable.

5. Houston Specialty issued a policy of insurance to Arlington Arms, Policy No. PRP0011NC1002, for the policy term of April 1, 2012 through April 1, 2013 (hereafter the "Policy").

6. The Policy provided coverage for Plaintiff's buildings, business personal property, and business income/loss of rents, subject to a $25,000.00 deductible. Upon information and belief, the limits of coverage under the policy are insufficient to pay all of the damage suffered by Plaintiff as a result of the subject hailstorm. Plaintiff paid a premium of $20,213.76 for this policy for the above-referenced policy term.

7. O'Daniell is a licensed public adjuster in the state of Oklahoma and was authorized by Plaintiff to communicate with Houston Specialty on Plaintiff's behalf in connection with the claim. Plaintiff specifically informed O'Daniell, however, that he did not have any settlement authority and certainly did not have the authority to make any agreements on Plaintiff's behalf.

8. In late 2013, Houston Specialty, through its appointed Texas counsel, offered Plaintiff the sum $141,714.27 and requested a full and complete release of all claims against Houston Specialty. Plaintiff refused to sign the release presented by Houston Specialty because Plaintiff rejected the $141,714.27 settlement offer.

9. Houston Specialty did not tender $141.714.27 as in undisputed amount.

10. On November 19, 2014, Houston Specialty, again through its appointed Texas counsel, took an examination under oath ("EUO") of Plaintiff's designated representative, Mr. Brent Wensauer, to ascertain the extent of Plaintiff's damage. Mr. Wensauer reiterated during his EUO that Plaintiff never agreed with Houston Specialty's $141,714.27 evaluation, and for that reason Plaintiff rejected said offer. During Mr. Wensauer's EUO, and shortly thereafter, he provided Houston Specialty's appointed Texas lawyers with additional information and documentation supporting the amount of its claim, *i.e.*, substantially in excess of $141,714.27.

11. In addition, Plaintiff made several demands upon Houston Specialty, through its appointed Texas counsel, to immediately and unconditionally pay the $141,714.27 as an undisputed amount. Despite the numerous demands made by Plaintiff in that regard, Houston Specialty has steadfastly refused to acknowledge Plaintiff's demands and/or pay the $141.714.27 to Plaintiff as an undisputed amount.

12. Houston Specialty has taken the position that its evaluation and offer of $141,714.27 was accepted by O'Daniell on behalf of Plaintiff, and therefore, Plaintiff is not entitled to recover anything over and above that amount. At the same time, however, Houston Specialty emphatically refuses to unconditionally pay the $141,714.27 to Plaintiff as the undisputed amount.

13. The damage suffered by Plaintiff as a result of the subject hailstorm exceeds the policy limits available under the Houston Specialty policy. Although Plaintiff has provided Houston Specialty with data from Xactimate, considered to be the standard in the industry, to date, Houston Specialty has not furnished Plaintiff or Plaintiff's counsel with any responsive data to support whatever position Houston Specialty is taking in this matter. Instead, Houston Specialty continues to delay and drag its feet, refusing to pay Plaintiff anything, not even the $141,714.27 that it admits it owes.

14. An insurance company doing business in Oklahoma "is held to knowledge of the applicable Oklahoma law and the reasonableness of its decision must be judg0ed in light of that law." *Willis v. Midland Risk Insurance Company*, 42 F.3d 607, 612 (10th Cir. 1994), citing *Timmons v. Royal Globe*, 653 P.2d 907, 913-14 (Okla. 1982). Houston Specialty has demonstrated through its action and non-actions that it has no knowledge of the applicable Oklahoma law and has not taken appropriate steps to learn that law.

## FIRST CAUSE OF ACTION

### BREACH OF CONTACT – HOUSTON SPECIALTY

The Plaintiff, Arlington Arms, for its first cause of action adopts and incorporates the allegations made in numerical paragraphs 1-14 above, and in addition, alleges and states:

15. Plaintiff has made demand upon Houston Specialty for payment of all insurance benefits due up to the policy limits of the Policy, and Plaintiff has met all conditions precedent for the payment of those policy benefits.

16. Houston Specialty breached its insurance contract with Plaintiff by failing to promptly and adequately investigate Plaintiff's loss, by delaying its investigation and payment to Plaintiff, and by refusing to unconditionally pay to Plaintiff what it already acknowledges it owes Plaintiff.

17. Now that suit has been filed, Plaintiff anticipates that Houston Specialty may choose to unconditionally pay to Plaintiff the $141,714.27 it acknowledges it owes or pay the full amount of the claim that it owes. However, even if Houston Specialty choose to do what it should have already done, this does not excuse Houston Specialty from *timely* paying Plaintiff. Thus, Houston Specialty's failure to *timely* pay Plaintiff the undisputed amount and the full value of the claim constitutes a breach of contract.

18. Plaintiff has suffered damages from Houston Specialty's breach of contract, including the deprivation of policy benefits, as well as incidental and consequential damages.

WHEREFORE, the Plaintiff, Arlington Arms, LLC prays for judgment against the Defendant, Houston Specialty, on its first cause of action, up to the applicable policy limits for each of its claims, plus costs, attorney fees, pre-judgment interest and all other relief to which it may be entitled.

## SECOND CAUSE OF ACTION

### TORTIOUS BREACH OF CONTRACT – HOUSTON SPECIALTY

The Plaintiff, Arlington Arms, for its second cause of action, adopts and incorporates the allegations made in numerical paragraphs 1-18 above, and in addition, alleges and states:

19. Houston Specialty owes Plaintiff, its insured, a duty to deal fairly and in good faith.

20. Houston Specialty has failed to deal fairly and in good faith with its insured, this Plaintiff, in several particulars. For example, although Houston Specialty conveniently takes the position that O'Daniell – who had no authority to accept a settlement offer from Houston Specialty – accepted the low-ball $141,714.27 evaluation and offer by Houston Specialty, Houston Specialty has refused to unconditionally pay that undisputed amount to Plaintiff, despite Plaintiff's repeated requests for same. Plaintiff has desperately needed that money to begin repairs. In addition, because some of these apartment units were rendered uninhabitable by the hailstorm, they have not been repaired to date, and thus, Arlington Arms has not been able to rent them out to other tenants. As a result, Plaintiff continues to lose rent money on a monthly basis. Houston Specialty cares not about Plaintiff's precarious situation.

21. Instead, Houston Specialty has recommended mediation so that it can pay less than what it owes. Houston Specialty even refuses to pay for Plaintiff's portion of the mediation fee. This conduct is reprehensible and a grotesque act of bad faith.

22. The acts and conduct of Houston Specialty, described above, were and continue to be reckless, intentional, wanton and oppressive. They warrant the imposition of punitive damages against Houston Specialty, as punishment and example to Houston Specialty, and to deter others from like conduct.

WHEREFORE, Plaintiff prays for judgment against Houston Specialty in an amount in excess of $75,000.00, costs of this action, attorneys fees, interest at the rate allowed by law and any further relief this Court deems equitable and proper.

### THIRD CAUSE OF ACTION

### NEGLIGENCE – O'DANIELL

The Plaintiff, Arlington Arms, adopts and re-alleges the allegations contained in numerical paragraphs 1-22 above and, in addition, alleges and states:

23. Houston Specialty has argued that O'Daniell accepted its $141.714.27 unreasonable settlement offer. Upon information and belief, O'Daniell emphatically rejects Houston Specialty's position in this regard and Plaintiff clearly rejects it as well. Likewise, O'Daniell and Plaintiff deny that O'Daniell had authority to accept any settlement offers or that O'Daniell led Houston Specialty to believe he was vested with any settlement authority.

24. Nonetheless, in the event it is determined that O'Daniell was cloaked with full settlement authority and did accept the low-ball $141.714.27 offer made by Houston Specialty, then, and in that event, O'Daniell would be liable to Plaintiff for his own negligence in allowing Houston Specialty to believe he had authority to enter into settlement agreements with Houston Specialty on behalf of Plaintiff.

25. As result of O'Daniell's negligence in that regard, as described above, Plaintiff has been damaged.

WHEREFORE, in the event it is determined that O'Daniell had authority to enter into settlement agreements on behalf of Plaintiff and that O'Daniell accepted Houston Specialty's $141,714.27 settlement offer, then, and in only in that event, Plaintiff prays for judgment against

O'Daniell for an amount that would completely compensate Plaintiff for its losses sustained as a result of the May 29, 2012, hailstorm.

Respectfully submitted,

_/s/ Gerard F. Pignato_

Gerard F. Pignato, OBA No. 11473
PIGNATO, COOPER, KOLKER & ROBERSON, P.C.
Robinson Renaissance Building
119 North Robinson Avenue, 11th Floor
Oklahoma City, Oklahoma 73102
Telephone:   405-606-3333
Facsimile:    405-606-3334
Email:          jerry@pclaw.org
**ATTORNEYS FOR PLAINTIFF,
ARLINGTON ARMS, LLC**

**JURY TRIAL DEMANDED**