IN THE UNITED STATES DISTRICT COURT FOR

THE WESTERN DISTRICT OF OKLAHOMA

ARLINGTON ARMS, LLC,                )
                                    )
            Plaintiff,              )
                                    )
vs.                                 )        No. CIV-15-702-W
                                    )
HOUSTON SPECIALTY INSURANCE         )
COMPANY and DEREK O'DANIELL,        )
                                    )
                                    )
            Defendants.             )

## ORDER

Plaintiff Arlington Arms, LLC ("Arlington Arms"), filed this action on January 29, 2015, in the District Court for Oklahoma County, Oklahoma, and named as defendants Houston Specialty Insurance Company ("Houston Specialty") and Derek O'Daniell, a public adjuster licensed by the State of Oklahoma. See Doc. 1-2. In its state court petition, as amended on May 11, 2015, see Doc. 1-3[1] (hereafter "petition"), Arlington Arms alleged that it conducts business as an apartment complex in Oklahoma City, Oklahoma, see Doc. 1-2 at 1, ¶ 1, and that Houston Specialty issued a policy of insurance that provided coverage for Arlington Arms' buildings, business personal property and business income/loss of rents, subject to a $25,000.00 deductible. See id. at 2, ¶ 6.

Arlington Arms further alleged that on May 29, 2012, a hailstorm caused damage to the buildings and rendered several units uninhabitable. According to the petition,

---

[1]On May 12, 2015, Arlington Arms sought leave to amend its amended petition and name two additional defendants: Strata Claims Management and Strata Underwriting Managers. See Doc. 1-1 at 4. Leave to amend was granted on June 25, 2015, but the matter was removed before Arlington Arms filed a second amended petition.

Houston Specialty offered Arlington Arms the sum of $141,714.27 to resolve the disputed claim,[2] but Arlington Arms rejected the offer.

In its pleading, Arlington Arms sought redress under state law against Houston Specialty for breach of contract and tortious breach of the implied covenant to act in good faith and to deal fairly. It further contended that if O'Daniell was found to have possessed the authority to accept settlement offers on behalf of Arlington Arms or if O'Daniell let Houston Specialty believe he was vested with such authority, then O'Daniell acted negligently and "[a]s [a] result of O'Daniell's negligence . . . , [Arlington Arms] . . . has been damaged." Doc. 1-2 at 6, ¶ 25.

Houston Specialty was served with the original petition on January 30, 2015, see Doc. 1-9 at 1-4; it removed the case on June 26, 2015, see Doc. 1, and asserted in the Notice of Removal that this Court has subject matter jurisdiction over this suit under title 28, section 1332(a) of the United States Code because the amount in controversy, exclusive of interest and costs, exceeds the sum of $75,000.00 and because the citizenship of Arlington Arms and Houston Specialty is diverse: Arlington Arms is a citizen of the State of Oklahoma,[3] and Houston Specialty is a citizen of the State of Texas, with its principal place of business in Houston, Texas. See Doc. 1 at 2, ¶¶ 3-5. Houston

---

[2] In its Motion to Remand, Arlington Arms has stated that Houston Specialty made an initial payment in the amount of $65,000.00 after Houston Specialty engaged in settlement discussions with O'Daniell, see Doc. 6 at 2, and that Arlington Arms accepted and used the money—deemed to be "woefully insufficient," id., to make certain repairs.

[3] The citizenship for diversity purposes of a limited liability company is the citizenship of each of its members. E.g., Drinnon v. Drinnon Construction, LLC, 2014 WL 5018615 *1 (W.D. Okla. 2014). Houston Specialty has not identified Arlington Arms' members or the citizenship of those members; for purposes of the instant motion, the Court has assumed that at least one member is a citizen of Oklahoma and that no member is a citizen of the State of Texas.

2

Specialty contended that even though O'Daniell is also alleged to be an Oklahoma citizen, see Doc. 1-2 at 1, ¶ 3, his citizenship should be ignored since his joinder is merely a fraudulent device to defeat the Court's exercise of jurisdiction and/or to prevent the removal of this case from state court.[4]

As a threshold matter, the Court must determine whether removal was timely. Title 28, sections 1446(b)(1) and 1446(b)(3) of the United States Code provide, respectively, that

> [t]he notice of removal . . . shall be filed within 30 days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action . . . is based . . . ,

28 U.S.C. § 1446(b)(1), and that

> if the case stated by the initial pleading is not removable, a notice of removal may be filed within 30 days after receipt by the defendant, through service or otherwise, of a copy of . . . [an]other paper from which it may first be ascertained that the case is one which is or has become removable.

Id. § 1446(b)(3).

Federal courts are courts of limited jurisdiction; these thirty (30)-day time limits are therefore strictly construed. See Pritchett v. Office Depot, Inc., 420 F.3d 1090, 1094-95 (10th Cir. 2005)(well-established that statutes conferring jurisdiction upon federal courts, and particularly removal statutes, are narrowly construed). The key to determining whether Houston Specialty's Notice of Removal was timely filed is determining when the applicable thirty (30)-day removal period began.

---

[4]See 28 U.S.C. § 1441 (b)(2)(civil action may not be removed if any of the parties in interest properly joined and served as defendants is a citizen of state in which action is brought).

3

As stated, Houston Specialty was served on January 30, 2015. See Doc. 1-9 at 1-4. The Notice of Removal was not filed until June 26, 2015. See Doc. 1. Unless Houston Specialty can demonstrate that "the case stated by the initial pleading [was] . . . not removable," 28 U.S.C. § 144(b)(3), the Notice of Removal was untimely. The Court finds Houston Specialty has not made the requisite showing because the fraudulent-joinder argument which Houston Specialty has asserted to establish subject matter jurisdiction was known to Houston Specialty from the face of the petition.

Fraudulent joinder "need not involve actual fraud in the technical sense. Instead, . . . [fraudulent joinder] can occur when the plaintiff joins a 'resident defendant against whom no cause of action is stated' in order to prevent removal under a federal court's diversity jurisdiction." Brazell v. Waite, 525 Fed. Appx. 878, 881 (10th Cir. 2013)(cited pursuant to Tenth Cir. R. 32.1)(citation omitted). That is to say, "'[t]o establish [fraudulent] joinder, [Houston Specialty] . . . must demonstrate . . . [Arlington Arms'] inability . . . to establish a cause of action against [O'Daniell, as] the non-diverse party in state court.'" Dutcher v. Matheson, 733 F.3d 980, 988 (10th Cir. 2013)(quoting Cuevas v. BAC Home Loans Servicing, LP, 648 F.3d 242, 249 (5th Cir. 2011)); e.g., Dodd v. Fawcett Publications. Inc., 329 F.2d 82, 85 (10th Cir. 1964)(removing party has burden to show plaintiff has "no cause of action" against non-diverse defendant).

Arlington Arms alleged in its state court petition that while it authorized O'Daniell to communicate with Houston Specialty on Arlington Arms' behalf in connection with the damage it suffered as a result of the hailstorm and the denial of its claim for coverage, O'Daniell was "specifically informed . . . that he did not have any settlement authority and

certainly did not have the authority to make any agreements on [Arlington Arms'] . . . behalf." Doc. 1-2 at 2, ¶ 7. Arlington Arms further alleged

(1) that Houston Specially offered the sum of $141,714.27 and requested a full and complete release of all claims;

(2) that it (Arlington Arms) rejected the offer and refused to sign the release and continued to provide Houston Specialty with information and documentation supporting its claim, which was in excess of the proposed amount;

(3) that a demand was made on Houston Specialty to "immediately and uncon-ditionally pay the [sum of] $141,714.27 as an undisputed amount[,]" id. at 3, ¶ 11; and

(4) that "Houston Specialty has taken the position that its evaluation [of the damage] and [its] offer . . . [were] accepted by O'Daniell on behalf of [Arlington Arms] . . . ." Id. ¶ 12.

Arlington Arms more specifically contended in the petition's third cause of action

(1) that O'Daniell has "emphatically reject[ed] Houston Specialty's position [that he accepted the offer] . . . and [has] . . . den[ied] that [he] . . . had authority to accept any settlement offers or that [he] . . . led Houston Specialty to believe he was vested with any settlement authority[,]" id. at 6, ¶ 23; but

(2) "in the event it is determined that O'Daniell was cloaked with full settlement authority and did accept the low-ball . . . offer made by Houston Specialty, then . . . O'Daniell would be liable to [Arlington Arms] . . . for his own negligence in allowing Houston Specialty to believe he had authority to enter into settlement agreement with Houston Specialty on behalf of . . . [Arlington Arms,]" id. ¶ 24, and he would owe Arlington Arms that "amount that would completely compensate [Arlington Arms] . . . for its losses . . . as a result of the . . . hailstorm." Id. at 7.

In the context in which this dispute arises, the question is not simply whether the state court petition stated a claim against O'Daniell under Rule 12(b)(6), F.R.Civ.P., because it contains well-pleaded factual allegations.[5]  Rather, the standard to be applied in this instance "is more exacting than that for dismissing a claim under [Rule] 12(b)(6); indeed, the latter entails the kind of merits determination that, absent fraudulent joinder, should be left to the state court where the action was commenced." Montano v. Allstate Indemnity, 2000 WL 525592 *2 (10th Cir. 2000)(cited pursuant to Tenth Cir. R. 32.1) (citation omitted).  The question presented is instead whether Arlington Arms can state a claim for relief based on negligence against O'Daniell, which is a distinct inquiry,[6] and only if that question is answered in the negative may O'Daniell's citizenship be disregarded.  On the other hand, if there is a reasonable basis to believe that Arlington Arms might prevail against this non-diverse defendant, then O'Daniell has not been fraudulently joined.[7] E.g., Nerad v. AstraZeneca Pharmaceuticals, Inc., 203 Fed. Appx. 911, 913 (10th Cir. 2006) (cited pursuant to Tenth Cir. R. 32.1).

---

[5]If the issue of fraudulent joinder was solely governed by Rule 12(b)(6), F.R.Civ.P., then Arlington Arms would arguably be permitted to amend its state court pleading to state a plausible negligence claim against O'Daniell sufficient to meet the Twombly/Iqbal standard.  E.g., Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007); Ashcroft v. Iqbal, 556 U.S. 662 (2009).

[6]E.g., Dollison v. American Natural Insurance Co., 2013 WL 1944891 *8 (N.D. Okla. 2013) (analysis to determine whether there is possibility of recovery in the fraudulent joinder context differs from analysis of whether plaintiff has stated claim upon which relief may be granted in motion to dismiss context).

[7]O'Daniell was served on February 3, 2015, see Doc. 1-9 at 6-7, but had not answered or otherwise responded to the allegations in the petition at the time the matter was removed.  Houston Specialty has argued that although O'Daniell is in default, Arlington Arms' failure to seek judgment against him "demonstrate[s] [that Arlington Arms has] no real intention of litigating the claims against . . . O'Daniell." Doc. 1 at 2, ¶ 7.

"A 'reasonable basis' means just that:  the claim need not be a sure-thing, but it must have a basis in the alleged facts and the applicable law." Id. Thus, "'[t]o prove [its] . . . allegation of fraudulent joinder . . . [Houston Specialty] must demonstrate that there is no possibility that . . . [Arlington Arms] would be able to establish a [negligence] cause of action against . . . [O'Daniell] in state court.'" Montano *1 (quoting Hart v. Bayer Corp., 199 F.3d 239, 246 (5th Cir. 2000)(quotation omitted))(further citations omitted).[8]

Houston Specialty has argued inter alia both in its Notice of Removal, see Doc. 1 at 4, ¶ 12, and in its response to Arlington Arms' Motion to Remand, see Doc. 10 at 13, that Arlington Arms has failed to assert a valid cause of action against O'Daniell.[9]  It has contended that because Arlington Arms has sought only economic relief from O'Daniell,[10] Arlington Arms' negligence claim is barred by the "economic loss rule."  This rule, which was adopted by the Oklahoma Supreme Court in Waggoner v. Town & Country Mobile Homes, Inc., 808 P.2d 649 (Okla.1990), was first recognized by the United States Supreme Court in East River S.S. Corp. v. Transamerica Delaval, Inc., 476 U.S. 858 (1986).  The

---

[8]In considering the burden of proof of establishing fraudulent joinder in this circuit, compare Montano, 2000 WL 525592 *4-5 (citing Hart, 199 F.3d at 246)(to prove fraudulent joinder, removing party must demonstrate that there is no possibility that plaintiff would be able to establish cause of action against defendant in state court; court must determine whether nonremoving party has any possibility of recovering against defendant whose joinder is questioned), with Nerad, 203 Fed. Appx. at 913 (citing Badon v. RJR Nabisco, Inc., 224 F.3d 382, 393 (5th Cir. 2000))(where fraudulent joinder is claimed, court must decide whether there is a reasonable basis to believe plaintiff might succeed on at least one claim against nondiverse defendant).

[9]Because the Court finds this argument to be dispositive, the Court has not addressed the other theories advanced by Houston Specialty in support of its contention that O'Daniell's joinder is fraudulent.

[10]See Doc. 1-2 at 6-7 ("Plaintiff prays for judgment against O'Daniell for an amount that would completely compensate Plaintiff for its losses sustained as a result of the May 29, 2012, hailstorm.").

7

latter court, sitting in admiralty, determined that a products liability claim was not actionable absent personal injury or damage to other property.  E.g., id. at 870.

The state court in Waggoner wrote:

> The facts of this case involve only economic loss and disappointment associated with [the] manufacturer's unsuccessful attempts to remedy condensation within [the] consumers' mobile home.  No personal injury or damage to other property occurred.  Damage was limited to the product itself.  Therefore, any recovery must be based upon the contractual relationship, specifically the warranty provisions, express or implied.

808 P.2d at 653.  "The reasoning of Waggoner applies to the full range of unintentional torts," United Golf, LLC v. Westlake Chemical Corp., 2006 WL 2807342 *3 (N.D. Okla. 2006)(citing Waggoner, 808 P.2d at 652-53), including negligence.

Assuming arguendo that O'Daniell's joinder is fraudulent because, as Houston Specialty has asserted, Arlington Arms' negligence claim against O'Daniell is barred, the Court finds the matter must be remanded because Houston Specialty's Notice of Removal was untimely filed.  Fraudulent-joinder removals must comply with the thirty (30)-day deadline in section 1446(b)(1) because, for purposes of the instant case, that thirty (30)-day period was triggered by service of the state court petition on Houston Specialty since Houston Specialty was able, as it has claimed, "to intelligently ascertain removability from the face of such . . . pleading." Ardison v. Villa, 248 F.2d 226, 227 (10th Cir 1957).[11]  The petition served on January 30, 2015, gave Houston Specialty all the information it needed to advance its argument, assuming without deciding that Oklahoma courts would apply the economic loss rule under the circumstances of this case, that O'Daniell was fraudulently

---

[11]This is particularly true when removal is based on allegations of fraudulent joinder as in this case since Houston Specialty is in effect arguing that but for O'Daniell's fraudulent joinder complete diversity of citizenship existed at the time the state court petition was filed.

joined because the negligence claim against O'Daniell, which Houston Specialty has labeled "a 'highly dubious theory of liability,'" Doc. 10 at 13, was barred.[12]  The Notice of Removal was filed well-beyond the thirty (30) days provided in section 1446(b)(1) and Houston Specialty's "'failure to comply with th[is] express statutory requirement[ ] for removal . . . render[s] the removal "defective" and justif[ies] a remand.'"  Huffman v. Saul Holdings Ltd. Partnership, 194 F.3d 1072, 1077 (10th Cir. 1999)(quotation omitted).

Accordingly, the Court

(1) GRANTS Arlington Arms' Motion to Remand [Doc. 6] filed on July 24, 2015, but in its discretion DENIES Arlington Arms' request that it be awarded the attorney fees and costs it has incurred as a result of removal, e.g., 28 U.S.C. § 1447(c);

(2) REMANDS this matter to the District Court of Oklahoma County, Oklahoma; and

(3) DIRECTS the Clerk of this Court to send a certified copy of this Order to the Clerk of the state court to which this matter is remanded.

ENTERED this 31st day of December, 2015.

LEE R. WEST
UNITED STATES DISTRICT JUDGE

---

[12]While this circuit specifically disagrees with those "cases from other jurisdictions which impose a duty to investigate and determine removability," Akin v. Ashland Chemical Co., 156 F.3d 1030, 1036 (10th Cir 1998), no post-petition investigation was necessary in this case since, as Houston Specialty appears to have conceded, see Doc. 1 at 4, ¶ 12, Houston Specialty could determine from the face of the original petition that it could argue that no actionable negligence claim had been asserted against O'Daniell.